

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00460-CR

Michael A. **WILSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR8205
Honorable Velia J. Meza, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
              Irene Rios, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: March 23, 2022

AFFIRMED

A jury convicted Michael A. Wilson of (1) false name, false information, and forgery;
(2) aggravated perjury; and (3) theft with the value of $2,500 or more, but less than $30,000. On
appeal, Wilson asserts there is legally insufficient evidence to support each count. We affirm.

### BACKGROUND

The State called seven witnesses at trial. We review their testimony in turn.

### *Auto Repair Owner's Testimony*

The State's first witness was James Riley, the owner of an auto repair shop. Wilson told Riley he had a Chrysler 300 that needed repairs (including a new engine) and he wanted to sell it. Riley bought the Chrysler 300 from Wilson for $1,200. Wilson had a copy of the title, signed the title over to Riley as "seller," and they filled out a title application. Riley did not sign the back of the title because he knew that he was going to sell the Chrysler 300 after repairing it. After making repairs, Riley sold the vehicle to "Veronica" around the spring of 2018 for $4,500 in cash. Riley delivered the title, a bill of sale, and a title application.

### *Officer Daniel's Testimony*

The State's second witness was San Antonio Police Department ("SAPD") Officer Hugo Daniel. Daniel is a patrol and Community SAFFE (San Antonio Fear Free Environment) officer with a specific patrol area on the west side of San Antonio. Patrolling on April 18, 2018, Daniel came upon a convenience store on the corner of Huntington and Zarzamora "where a lot of vagrants hang out, drug dealers, panhandling." Daniel noticed men congregating around a 2005 Chrysler 300, vehicle identification number (VIN) 2C3JA53G85H630525 (the "vehicle"). He recognized two of the men from previous encounters resulting in drug arrests. Veronica Cruz was sitting inside the vehicle, and two men were outside of it. One of the men standing outside the car possessed meth. After Cruz consented to a search of the vehicle, heroin was found in the console. Daniel contacted the follow-up narcotics unit, and he was advised that they were going to put a hold on the vehicle.

### *District Attorney Paralegal's Testimony*

The State's third witness was Pamela Garcia-McCormick who, at the relevant time, was employed by the Bexar County District Attorney's Office as a paralegal in the Asset Forfeiture Department. Garcia-McCormick's duties included creating asset forfeiture files; drafting petitions

and discovery; and filing and service of documents on all respondents and any registered owners of vehicles. Garcia-McCormick recalled and recounted her interactions with Wilson.

Wilson was listed as one of the three respondents in the civil forfeiture because the Texas Motor Vehicles Department listed him as the registered owner of the vehicle that was seized. Wilson called the DA's office because he had been served with paperwork stating that he was listed as the registered owner of the vehicle. He said he wanted his car back. She asked Wilson if he was still the owner and whether he had sold the vehicle, and Wilson told her he had not sold the car. She also asked Wilson if he knew the other respondents, and she asked him why they possessed the vehicle. Wilson told her that he did not know who they were or how they got his vehicle.

Garcia-McCormick told Wilson that her office had an innocent owner form for when a registered owner's car had been used in a crime. On the affidavit of innocent owner, Wilson asserted ownership of the vehicle. Garcia-McCormick prepared the form and instructed Wilson that he would have to file the innocent owner form with the district court. In response to Wilson's filing of the form, the DA's office prepared a nonsuit for the vehicle. The DA's office then notified the law enforcement agency, and the law enforcement agency instructed the pound to release the vehicle to Wilson. She explained that if Wilson had no interest in the vehicle, he could have filed an answer to the forfeiture suit responding that he had no interest in the vehicle or he could have not answered and allow a default judgment to be taken against the vehicle. The affidavit of innocent owner is the subject of count two of the indictment.

After the vehicle was nonsuited from the forfeiture proceeding, Wilson called Garcia-McCormick and told her he was being investigated for the vehicle and asked for her help. She told him that the DA's office represented the State of Texas; could not give him legal advice or work on his behalf; and advised him to seek counsel. She asked him why they would be investigating

him. He responded it was because he had sold the vehicle. She realized he was not the owner of the vehicle as he had previously claimed.

***Assistant District Attorney's Testimony***

The State's fourth witness was Clarkson Brown. In May 2018, Brown was employed by the Bexar County District Attorney's Office in the Civil Division to handle asset forfeitures. At trial, Brown explained the process of filing an innocent owner affidavit and nonsuiting the vehicle. Brown nonsuited the vehicle based on Wilson's affidavit and the title history of the car as retrieved from the Department of Motor Vehicles. As a result of the nonsuit, the DA's office no longer sought to seize the vehicle.

***DMV Employee's Testimony***

The State's fifth witness was Denise Garcia, who is currently employed by the Texas Department of Motor Vehicles. Garcia is a customer service representative responsible for issuing certified copies of titles. To receive a certified copy of a vehicle title, a customer presents their VIN or license plate number to the DMV. The DMV asks for the customer's identification and retrieves records with that information. Once the DMV determines the customer is the owner, it issues a quick print form and has the customer sign it to check and see if there are any other owners (or a lienholder). If the customer is the only owner, the customer signs the application requesting a certified copy of the title and pays for issuance of the title. Significantly, if a person purchased a vehicle but did not register it with the Department of Motor Vehicles, that person would not show up in the title records.

The certified title history for the vehicle was admitted into evidence. The title history reveals that, on March 23, 2018, Wilson filed an application for a certified copy of title for the vehicle. The application was signed by Wilson. On April 4, 2018, Wilson signed the March 2018 certified copy of title as "seller." Then, on May 31, 2018, Wilson filed a second application for a

certified copy of a title. The second application was signed by Wilson, and Wilson certified "the original title issued for the vehicle has been lost, destroyed or mutilated." The second application is the subject of count one of the indictment.

### *Asset Seizure Unit Detective's Testimony*

The State's sixth witness was SAPD Detective William Sendejo. Sendejo worked in the SAPD Asset Seizure Unit. His duties included seizing property and vehicles related to drug activities. Sendejo explained the process the SAPD undertakes to release seized vehicles. To release a seized vehicle, a detective fills out a form called a "113 release" and sends it to the pound. The pound then releases the vehicle. Once the SAPD receives a notice of nonsuit, it is their job to release a vehicle. On June 12, 2018, Sendejo released the vehicle after receiving the nonsuit from the court. The June 2018 release of the vehicle to Wilson—issued pursuant to the nonsuit—is the subject of count four of the indictment.

### *Auto Theft Unit Detective's Testimony*

The State's last witness was SAPD Detective Washington Moscoso. Moscoso is currently employed in the SAPD Auto Theft Unit. The Auto Theft Unit investigates vehicle crimes, auto thefts, burglaries, and title fraud. Moscoso received a call from a west patrol officer who called with a question regarding title to the vehicle. Moscoso thereafter met with Cruz, the complainant, who had called the police to make a vehicle theft report. After speaking with Cruz, Moscoso called Wilson and asked him to come in and speak with him to explain his side of the story.

Wilson agreed to go to Moscoso's office the following day. However, Wilson failed to attend the appointment. About an hour after their scheduled time, Moscoso called Wilson and left a voice mail. Returning the call, Wilson told Moscoso he had been advised he did not have to meet with Moscoso, stated that the vehicle was "awarded" to him by the court, "had a few choice words," and hung up.

Moscoso later spoke to a detective in the Asset Seizure division and Garcia-McCormick. He gathered various documents connected with the vehicle. He determined the vehicle had been sold to Cruz, the title was handed over to Cruz, and Cruz's subsequent narcotics arrest resulted in the vehicle's seizure. From the time Cruz purchased the vehicle until her arrest, she did not register the vehicle in her name. Thus, when the vehicle was seized, Wilson (as the registered owner) received notification of the seizure. After collecting evidence, Moscoso filed charges against Wilson.

### Trial Court Proceedings

Wilson was charged in a four-count indictment with various crimes associated with ownership of and litigation over the vehicle. After a jury trial, he was convicted of one count of false name, false information, and forgery; one count of aggravated perjury; and one count of theft with the value of $2,500 or more, but less than $30,000. He was acquitted of count three, securing execution of a document by deception. On September 11, 2020, the trial court sentenced Wilson. This appeal followed.

## MOTION TO SUPPLEMENT CLERK'S RECORD

On March 5, 2021, Wilson filed a motion to supplement clerk's record. The motion seeks to supplement the appellate record with documents from the civil forfeiture proceeding not presented in the trial court. The motion recites no law—and we can find no law—supporting Wilson's request. Rather, the only case cited by Wilson, *Victory v. State*, discusses principles of res judicata wholly inapplicable here and affirms the impropriety of Wilson's request. 158 S.W.2d 760, 762 (Tex. 1942) ("It is also an accepted rule of law in this court that an appellate court cannot go to the record of another case for the purpose of ascertaining a fact not shown in the record of the case before it."); *see also, e.g.*, *Copeland v. Moreland*, No. 06-14-00075-CV, 2015 WL 545679, at *2 (Tex. App.—Texarkana Feb. 10, 2015, no pet.) (refusing to consider brief appendix

containing documents from another proceeding not contained in the appellate record). We accordingly deny the motion.

## STANDARD OF REVIEW

In assessing legal sufficiency, our role is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The essential elements of the offense are defined by the hypothetically correct jury charge for the case. *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013). Conflicting inferences are resolved in favor of the verdict. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Direct and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## LEGAL SUFFICIENCY

In three issues, Wilson asserts the evidence is legally insufficient to support his convictions on counts one, two, and four. We address each in turn.

### Count One

With respect to his first issue, Wilson asserts the evidence is legally insufficient to establish beyond a reasonable doubt that the vehicle Wilson sold to Riley is the same vehicle that was seized from Cruz and made subject of the forfeiture proceedings. We disagree.

Our review of the record reveals significant evidence on which the jury could rationally infer the vehicle Wilson sold to Riley is the same one seized from Cruz. In addition to the testimonial evidence discussed above, the March 2018 certified title signed by Wilson (as seller on April 4, 2018) and Cruz (as buyer) was admitted into evidence. Assessing the evidence in the

light most favorable to the verdict, we hold a rational trier of fact could have found the essential elements of count one beyond a reasonable doubt. *See Evans*, 202 S.W.3d at 161. We overrule Wilson's first issue.

### *Count Two*

With respect to his second issue, Wilson asserts the evidence is legally insufficient to convict on aggravated perjury because "Wilson was in fact the owner of the vehicle under the definition of 'owner' under both the Penal Code and the Transportation Code." In support of this assertion, Wilson argues the record contains no evidence to establish what circumstances Cruz acquired lawful possession of the vehicle or that Wilson's interest in the vehicle extinguished by the time he executed the affidavit asserting ownership. We disagree.

The jury could have rationally inferred Cruz (who had actual possession of both the vehicle and the March 2018 certified copy of title signed by Wilson) acquired lawful possession of the vehicle after (1) Wilson (signing the March 2018 certified copy of title as "seller") sold the vehicle to Riley and (2) Riley repaired the vehicle and sold it to Cruz. Garcia's testimony established that Cruz would not have shown up in a record title search if she did not register the vehicle with the DMV, and Cruz did not register the vehicle with the DMV until February 26, 2019. Assessing the evidence in the light most favorable to the verdict, we hold a rational trier of fact could have found the essential elements of count two beyond a reasonable doubt. *See Evans*, 202 S.W.3d at 161. We overrule Wilson's second issue.

### *Count Four*

With respect to his third issue, Wilson asserts the evidence is legally insufficient because "the only evidence as to the value of the vehicle is $1,000." Wilson contends Cruz's 2019 application for title registration indicating a sale's price of $1,000 is conclusive evidence of the vehicle's value. In response, the State asserts Riley's testimony that he sold the vehicle for $4,500

after replacing the engine and repairing it was sufficient for the jury to convict on count four. In reply, Wilson argues Riley's testimony must be disregarded by this court because it is contrary to Cruz's 2019 application. It is the jury's duty—not ours—to resolve conflicting evidence of value in a theft conviction. *See, e.g.*, *Choice v. State*, 351 S.W.3d 77, 79–80 (Tex. App.—Tyler 2011, pet. ref'd). Assessing the evidence in the light most favorable to the verdict, we hold a rational trier of fact could have found the essential elements of count four beyond a reasonable doubt. *See Evans*, 202 S.W.3d at 161. We overrule Wilson's third issue.

## CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH